## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| **CLARENCE FROST ET AL.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO:  0:24-cv-00950-KMM-LIB** |
| | ) | |
| **LION BRAND YARN COMPANY,** | ) | **Judge Katherine M. Menendez** |
| | ) | |
| | ) | **Magistrate Judge Leo I. Brisbois** |
| **Defendant.** | ) | |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

In the present matter, Plaintiffs purport to assert claims under Title III of the ADA, 42 U.S.C. § 12181 et seq. ("Title III") and the Minnesota Human Rights Act ("MHRA"), Minn. Stats. 363A.11.  This Court lacks subject matter jurisdiction to entertain this matter as Plaintiffs lack Article III standing to sue Defendant Lion Brand Yarn Company ("Lion Brand") as they have failed to articulate a sufficiently concrete and particularized injury and as they have failed to establish that the injury would be redressed by judicial relief. As the Court lacks subject matter jurisdiction to hear Plaintiffs' federal question claim, there is no basis for supplemental jurisdiction and the Court should dismiss Plaintiffs' MHRA claim as well.  For this reason, Lion Brand respectfully requests that the Court grant its Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1).

Further, it is undisputed that Title III (and consequently the MHRA) applies to places of public accommodation.  However, there exists a great deal of dispute as to whether stand-alone websites are places of public accommodation.  Notably, in the present matter, Plaintiffs Clarence and Tammy Frost do not even allege that websites in general

1

are places of public accommodation or that the website at the center of this lawsuit, https://www.lionbrand.com/, is a place of public accommodation that must comply with Title III.  This omission is fatal to Plaintiffs' claim.  However, even if Plaintiffs did include this critical allegation (which they did not), because Title III does not explicitly apply to websites that are untethered to physical locations, Plaintiffs' Complaint still fails to state a claim upon which relief may be granted; as such, dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is warranted.

For these and the following reasons, Lion Brand respectfully requests that the Court grant the instant Motion to Dismiss.

## BACKGROUND FACTS

Lion Brand owns and operates the website https://www.lionbrand.com/ (the "Website"), which sells knitting and craft yarn directly to the public.  Compl. ¶¶ 1, 22. Lion Brand does not operate a physical store.  Compl. ¶ 24; https://www.lionbrand.com/[1] Plaintiffs assert without elaboration that they are "legally blind and are therefore disabled under the ADA."  Compl. ¶ 20.  Plaintiffs alleged that they are "reliant upon screen reader technology to navigate the Internet."  Compl. ¶ 7.

---

[1] The Court may take judicial notice of the contents of Essentia's website; after all, a complaint necessarily embraces a website when a defendant's conduct on that website is central to the dispute. *See Okash v. Essentia Health*, 2024 U.S. Dist. LEXIS 53126, *6 (D.Minn. 2024) (citing *WinRed, Inc v. Ellison*, 581 F. Supp. 3d 1152, 1167 n.9 (D. Minn. 2022)).

According to the Complaint, "as a consequence of her[2] [sic] experience visiting Defendant's Website, including in the past year, and from an investigation performed on her [sic] behalf, Plaintiffs found Defendant's Website has a number of digital barriers that deny screen-reader users like Plaintiffs full and equal access to important Website content—content Defendant makes available to is sighted Website users."  Compl. ¶. 26. The Complaint does not identify the date that Plaintiffs allegedly visited the Website, the purpose of the visit, or any harm Plaintiffs suffered as a result of the alleged visit to the Website.  Compl.

Plaintiffs include four generic allegations of alleged barriers on the Website:

a.  Defendant's Website fails to alert screen readers to pop-up window content. Instead, screen readers remain focused on the content of the Website's underly page. As a result, pop-up content Defendant deems important to convey to its sighted Website visitors is completely unavailable to screen reader users;

b.  The Website does not provide sufficient screen reader-accessible text equivalent for important non-text image(s).  People who are blind will not be able to understand the content and purpose of images, such as pictures, illustrations, and charts when no text alternative is provided.  Text alternatives convey the purpose of an image, including pictures, illustrations, charts, etc.

---

[2] The Complaint is virtually identical to a number of other complaints that have been filed by plaintiffs throughout the country regarding websites.  It appears that Plaintiffs have copied and pasted from these other complaints, hence the errors when referring to Plaintiffs.  The lack of specificity regarding the alleged barriers on the Website is another indication that Plaintiffs have copied and pasted this Complaint.

c.  Defendant's Website has inaccessible unordered lists which are unrecognized by screen reader technology.  Users who depend on screen reader technology should know if and when unordered lists are presented and available for viewing; and

d.  Defendant's Website uses color as the only means of conveying information, making the information unavailable to screen reader users.  Screen readers do not announce the color of text on a screen to the user, so a person who is blind would not be able to know that color is meant to convey certain information.

Compl. ¶ 26. No specifics are provided regarding the web pages Plaintiffs claim to have visited.  Compl.

Plaintiffs claim that "Plaintiffs would like to, intend to, and will attempt to access Defendant's Website in the future to brows research, or shop online and purchase the products and services that Defendant offers." Compl. ¶ 27.

## LAW AND ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id.* (citing *Gorog v. Best Buy Co*., 760 F.3d 787, 792 (8th Cir. 2014)).  However, the Court does not credit "legal conclusions . . . or a formulaic recitation of the elements of a

4

cause of action." *Id.* (quoting *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC,* 855 F.3d 949, 955 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678)).

### Plaintiffs Lack Article III Standing

Article III of the United States Constitution limits the exercise of judicial power to cases and controversies. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013). The case-or-controversy requirement demands that plaintiffs "establish that they have standing to sue." *Clapper*, 568 U.S. at 408 (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)).

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction, including for lack of standing, and "requires the Court to examine whether it has authority to decide the claims." *Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1063 (D. Minn. 2013). To demonstrate Article III standing, a plaintiff must establish: (1) he suffered injury-in-fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). To establish injury-in-fact, a plaintiff must allege facts showing "an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical." *Trump v. New York,* 141 S. Ct. 530, 535, 208 L. Ed. 2d 365 (2020) (quoting *Carney v. Adams*, 141 S. Ct. 493, 499, 208 L. Ed. 2d 305 (2020)). "Alleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing." *Hillesheim v. O.J.'s Cafe, Inc.,* 968 F.3d 866, 868 (8th Cir. 2020) (quoting *Hillesheim v. Holiday Stationstores, Inc.*, 900 F.3d 1007, 1010 (8th Cir. 2018)).

Further, to allege an "injury in fact" that confers standing to seek injunctive relief, a plaintiff must face a threat of ongoing or future harm. *Park v. Forest Serv. of the U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000). For an ADA claim, a party's intention to return to a facility that allegedly contains architectural barriers is a threat of future harm that is an injury in fact.[3]  *Smith v. Bradley Pizza, Inc.,* 314 F. Supp. 3d 1017, 1022 (8th Cir. 2020) (citing *Sawczyn v. BMO Harris Bank Nat'l Ass'n*, 8 F. Supp. 3d 1108, 1111 (D. Minn. 2014)).

An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  Although ADA plaintiffs are not required to engage in the "futile gesture" of attempting to enter a building with known barriers, see 42 U.S.C. § 12188(a)(1), "they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers," *Steger v. Franco, Inc*., 228 F.3d 889, 892 (8th Cir. 2000) (emphasis added). "Intent to return to the place of injury 'some day' is insufficient." *Id*. at 893 (citing *Lujan*, 504 U.S. at 564).

In *Holiday Stationstores, Inc.,* 900 F.3d at 1010, the Eighth Circuit affirmed dismissal of the appellant's Title III claims because his declaration did little more than describe the alleged violations, other than stating that he was deterred from visiting the store in the future and because it not explain how the lack of an access aisle or insufficient

---

[3] The Eighth Circuit has addressed this issue in the physical barrier context; as noted above, website accessibility is an issue of first impression in this Court.  However, as the remedy—injunctive relief—is the same in both a physical barrier and a website accessibility case, the cases addressing standing in physical barrier cases are applicable to the present matter.

vertical signage injured him. *Id.* ("Alleging bare violations of the ADA without evidence of an actual injury is insufficient to establish Article III standing") (citing *Braitberg v. Charter Commc'ns, Inc*., 836 F.3d 925, 929-30 (8th Cir. 2016)).

In *Smith*, 821 Fed. Appx. at 658, the Eighth Circuit affirmed the dismissal of the appellant's Title III claim, holding that appellant's "statement about having a 'desire to go back' amounts to no more than an intent to return 'some day,' which is insufficient to establish an injury in fact." *Id.* Similarly, in *Dalton v. Simonson Station Stores, Inc.,* 830 Fed. Appx. 486, 486 (8th Cir. 2020), the Eighth Circuit held that because the appellant "presented no evidence regarding the frequency or purpose of his trips to the area; and he provided evidence of only vague plans to return to the station in the future" he lacked standing to pursue his claims. *Id.* (citing *Lujan*, 504 U.S. at 564).

Plaintiffs' Title III claim fares no better than those in *Holiday Stationstores, Smith*, and *Dalton*. Indeed, Plaintiffs' Complaint appears to provide *less* information than was provided in these cases. At no point do Plaintiffs provide any information as to why they visited the Website or their interest in Lion Brand's products, nor do Plaintiffs describe any harm they suffered as a result of the alleged barriers on the Website. They also do not allege with any specificity that they plan to return to the Website.

In fact, the Complaint indicates that Plaintiffs themselves did not even encounter the alleged barriers on the Website. The sole Paragraph in the Complaint that refers to the alleged visit to the Website is written in passive voice and does not state that Plaintiffs experienced any harm; rather, it simply states that Plaintiffs—or an unidentified

investigator—found vague digital barriers on the Website.[4]  Specifically, Paragraph 26 of the Complaint states that "as a consequence of her  [sic] experience visiting Defendant's Website, including in the past year, and from an investigation performed on her [sic] behalf, Plaintiffs found Defendant's Website has a number of digital barriers that deny screen-reader users like Plaintiffs full and equal access to important Website content—content Defendant makes available to is sighted Website users."   The Complaint is silent as to whether Plaintiffs themselves actually even encountered any digital barriers; it certainly does not describe any harm Plaintiffs suffered as a result of the alleged barriers on the Website.  As the Complaint does not allege that Plaintiffs suffered an injury in fact, and as an injury in fact is required to obtain Article III standing, Plaintiffs do not have Article III standing to bring this claim; as such, this Court lacks subject-matter jurisdiction and the Complaint must be dismissed.

If the utter lack of harm were not enough to warrant dismissal (which it is), Plaintiffs failure to articulate an intent to return to the Website certainly is.  The Complaint's sole mention of any intent to return to the Website is contained in Paragraph 27 and states that Plaintiffs "would like to, intend to, and will attempt to access Defendant's Website *in the future* to browse, research, or shop online and purchase the products and services that

---

[4] The description of the alleged barriers are so vague that Lion Brand cannot possibly be considered to be on notice of a violation of Title III, nor could Lion Brand address these alleged barriers.  This is yet another reason that the Complaint fails to state a claim upon which relief may be granted and should be dismissed.

Defendant offers."[5] Compl. ¶ 27 (emphasis added).  An intent "in the future" is the epitome of a "some day" plan to return, which the Supreme Court and the Eighth Circuit have unequivocally held is insufficient to confer Article III standing.  *Lujan*, 504 U.S. at 564; *Steger* 228 F.3d at 893 ("Intent to return to the place of injury 'some day' is insufficient").

Plaintiffs have failed to articulate either a concrete injury or an intent to return to the place of the (non-existent) injury.  As such, Plaintiffs do not have Article III standing to bring these claims and this Court lacks subject matter jurisdiction.  For this reason, Lion Brand respectfully submits that dismissal of Plaintiffs' Title III claims is warranted.

## The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims

28 U.S.C. § 1367 permits courts to exercise supplemental jurisdiction only for a civil action for "which the district courts have original jurisdiction." 28 U.S.C. § 1367(a); see also id. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"). "[I]f a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011).  As set forth above, Plaitniffs lack standing for — and thus the Court lacks subject-matter jurisdiction for — their federal-question claims under Title III of the ADA. Thus, the Court has no basis for supplemental jurisdiction over Plaintiffs' remaining claims under the MHRA. *LeMaster v. Ditech Fin. LLC*, 2018 U.S. Dist. LEXIS

---

[5] Plaintiffs do not even identify the "products and services" that they claim to desire to purchase, likely because this Complaint has been copied and pasted from another complaint regarding another website.

131084, *5-6 (D. Minn. 2018) (citing *Myers v. Richland Cty.*, 429 F.3d 740, 749 (8th Cir. 2005)). The Court should therefore dismiss those claims without prejudice.

## Title III of the ADA Does Not Apply to the Website

The Americans with Disabilities Act was enacted in 1990, when the Internet as we know it today did not exist, and therefore, neither the ADA nor its implementing regulations, promulgated by the Department of Justice ("DOJ") in 1991, address website accessibility. See 42 U.S.C. § 12101 et seq.; ADA Standards for Accessible Design, 28 C.F.R. part 36.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any ***place of public accommodation*** by any person who owns, leases (or leases to), or operates a ***place of public accommodation***.".  42 U.S.C. § 12182(a) (emphasis added).  Similarly, the MHRA[6] provides that it is an unfair discriminatory practice:  (1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a ***place of public accommodation*** because of . . . disability . . . ; or (2) for ***a place of public accommodation*** not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.  Minn. Stat. § 363A.11, subd. 1(a) (emphasis added).

---

[6] Claims under the ADA and the MHRA are analyzed in the same fashion.  *Disability Support Alliance v. Heartwood Enters.,* 2016 U.S. Dist. LEXIS 23072, *13-14 (D. Minn. 2016) (citing *Wong v. Muddy Pig, Inc.,* 2015 U.S. Dist. LEXIS 5301, 2015 WL 225231, at *1 (D. Minn. 2015)).

The critical question is whether a website such as https://www.lionbrand.com/ is a "place of public accommodation" subject to the requirements of Title III.  Title III does not contain a definition of the term "place of public accommodation," but it does define "public accommodation" as follows:

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

11

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

*Id*. § 12181(7).

Notably, Congress did not prohibit discrimination in a "public accommodation", but rather, prohibited discrimination in "***places*** of public accommodation."  Therefore, the definition of the word "place" is of critical importance.  Merriam-Webster defines "place" as

1a: physical environment

b: a way for admission or transit

c: physical surroundings

2 a: an indefinite region or expanse

b: a building or locality used for a special purpose

3 a: a particular region, center of population, or location

b: a building, part of a building, or area occupied as a home

https://www.merriam-webster.com/dictionary/place.

These definitions demonstrate that "place" refers to a physical location; consequently, a "place of public accommodation" that must be accessible pursuant to Title III is the physical facility that houses a public accommodation.  This interpretation is

consistent with the existing regulations regarding Title III. Notably, the DOJ has not enacted any accessibility standards to be applied to the websites of private businesses; however, the DOJ has issued not one but two comprehensive sets of regulations regarding the accessibility of physical places of public accommodation pursuant to Title III. 28 CFR Part 36. That the DOJ has taken steps to prescribe standards only with respect to physical places bolsters the conclusion that Title III, as it is currently written, does not apply to websites, including https://www.lionbrand.com/.

There is a split among the courts on the issue of whether only a physical structure may be a "place" of public accommodation. The Eighth Circuit has not addressed this issue; it is an issue of first impression. Lion Brand submits that this Court should follow the well-reasoned precedent set forth by the plurality of the Circuits.

The Courts of Appeals for the Third, Sixth, Ninth, and Eleventh Circuits hold that the statute is unambiguous: "places of public accommodation" are physical structures, and the only goods and services that a disabled person has a "full and equal" right to enjoy are those offered at a physical location. Discrimination only exists if the discriminatory conduct has a "nexus" to the goods and services of a physical *place* of public accommodation. Therefore, websites such as https://www.lionbrand.com/, which are not connected to a physical place of public accommodation, are not places of public accommodation subject to accessibility requirements under Title III.

These Circuits base their conclusion on the plain language of the statute, which lists physical locales as "public accommodations." *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612-13 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation

13

is a place.. . . This is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places"); *Peoples v. Discover Financial Services, Inc.*, 387 F. App'x 179, 183 (3d Cir. 2010) ("Our court is among those that have taken the position that the term [public accommodation] is limited to physical accommodations"); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1010-11 (6th Cir. 1997) (en banc) ("As is evident by § 12181(7), a public accommodation is a physical place and this Court has previously so held"); *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1114 (9th Cir. 2000) ("Title III provides an extensive list of 'public accommodations' in § 12181(7) ... All the items on this list, however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services. . . . [T]his context suggests that some connection between the good or service complained of and an actual physical place is required."); *Rendon v. Valley Crest Prods., Ltd.,* 294 F.3d 1279, 1282 (11th Cir. 2002) ("Title III encompasses a claim involving telephonic procedures that, in this case, tend to screen out disabled persons from participation in a competition held in a tangible public accommodation."). *See also Cullen v. Netflix, Inc*., 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012), aff'd, 600 F. App'x 508, 509 (9th Cir. 2015) (holding that Netflix's website is unconnected to any physical, concrete retail establishment and is therefore not a public accommodation under the ADA); *Access Now, Inc. v. Southwest Airlines Co.,* 227 F. Supp. 2d 1312, 13218-19 (S.D. Fla. 2002), aff'd, 385 F.3d 1324, 1327-28 (11th Cir. 2004) (finding plaintiff failed to establish a nexus between southwest.com and any restriction on the full enjoyment of a physical, concrete place of public accommodation); *Gomez v. Bang*

& Olufsen Am., Inc., 2017 U.S. Dist. LEXIS 15457, 2017 WL 1957182, at *4 (S.D. Fla. 2017) ("All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-motar [sic] store. . . . Because Plaintiff has not alleged that Defendant's website impeded his personal use of Bang and Olfusen's retail locations, his ADA claim must be dismissed"); *Jancik v. Redbox Automated Retail, LLC,* 2014 U.S. Dist. LEXIS 67223, at *24 (C.D. Cal. 2014) (holding a website was not a place of public accommodation because it was not a physical place and there was not a sufficient nexus between the website and physical kiosks); *Young v. Facebook, Inc.,* 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) ("Under controlling Ninth Circuit authority, places of public accommodation' under the ADA are limited to actual physical spaces . . . Facebook operates only in cyberspace, and is thus is not a 'place of public accommodation' as construed by the Ninth Circuit. While Facebook's physical headquarters obviously is a physical space, it is not a place where the online services to which [the plaintiff] claims she was denied access are offered to the public.").

In contrast, the First and Seventh Circuits have held that places of public accommodation need not be physical structures. *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12 19-20 (1ˢᵗ Cir. 1994); *Doe v. Mutual of Omaha Insurance Co.,* 179 F.3d 557, 559 (7ᵗʰ Cir. 1999. The courts following this precedent rely on the argument that it would be an "absurd" result if certain businesses were exempt from the ADA. While there can be disagreement as to whether there is an "absurd" result if the websites of online-only businesses are covered, there can be no disagreement that neither the original intent of the drafters of the ADA nor the plain

language of the ADA contemplated websites.  The solution to what some may consider to be an "absurd" result is to lobby Congress or the DOJ to take action; the answer is not to develop more and more tortured interpretations of a clearly worded statute.  This Court should not follow the First and Seventh Circuits down the path of reading requirements into the statute that do not exist, and instead should follow the reasoning of the Third, Sixth, Ninth, and Eleventh Circuits and apply the plain language of the law.

Further, even if Title III applies to stand-alone websites (which it does not), Plaintiffs have not alleged that https://www.lionbrand.com/ is a place of public accommodation, which they must in order to state a claim.  Indeed, an ADA discrimination claim "requires that a plaintiff establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA."  *Hillesheim v. Myron's Cards & Gifts, Inc*., 897 F.3d 953, 955-956 (8th Cir. 2018).  Plaintiffs note that Lion Brand owns and operates the Website, but they never allege that the Website is a place of public accommodation and/or that it is subject to Title III of the ADA, likely because it is not.  This omission is fatal to Plaintiffs' claim.  As the Website is not a place of public accommodation and as Plaintiffs do not even allege as much, Plaintiffs' Complaint fails to state a claim upon which relief may be granted.  As such, Lion Brand respectfully requests that the Court dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6).

**CONCLUSION**

As Plaintiffs have failed to allege any harm at all, let alone any concrete injury in fact, or a plan to return to the Website, Plaintiffs lack Article III standing and this Court lacks subject matter jurisdiction to hear their Title III claim.  This lack of jurisdiction also requires the dismissal of Plaintiffs' MHRA claims.  Moreover, even if Plaintiffs did have standing—which they do not—because Title III and the MHRA do not apply to stand-alone websites such as https://www.lionbrand.com/, Plaintiffs have failed to state a claim upon which relief may be granted.  As such, Lion Brand respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

*/s/ Jennifer S. Rusie*
Jennifer Zwilling, MN Bar No. 0389153
Jackson Lewis P.C.
150 South Fifth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 359-1766
jennifer.zwilling@jacksonlewis.com

Jennifer S. Rusie (admitted pro hac vice)
Jackson Lewis, P.C.
611 Commerce Street, Suite 2803
Nashville, TN  37203
Telephone: (615) 565-1661
jennifer.rusie@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, the foregoing was served via the Court's ECF system upon the following:

**Jason D Gustafson**
Throndset & Michenfelder Law Office LLC
One Central Avenue West, Suite 101
St. Michael, MN 55330
Phone: 763-515-6110
Email: jason@throndsetlaw.com

**Patrick W Michenfelder**
Throndset Michenfelder Law Office, LLC
222 South Ninth Street, Ste 1600
Minneapolis, MN 55402
Phone: 763-515-6110
Email: pat@throndsetlaw.com

*/s/ Jennifer S. Rusie*
Jennifer S. Rusie

4878-4948-3206, v. 1

18