UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **CLARENCE FROST ET AL.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CASE NO:  0:24-cv-00950-KMM-LIB |
| | ) |
| **LION BRAND YARN COMPANY,** | ) Judge Katherine M. Menendez |
| | ) |
| | ) Magistrate Judge Leo I. Brisbois |
| **Defendant.** | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

In the present matter, Plaintiffs purport to assert claims under Title III of the ADA, 42 U.S.C. § 12181 et seq. ("Title III") and the Minnesota Human Rights Act ("MHRA"), Minn. Stats. 363A.11 in connection with the website of Defendant Lion Brand Yarn Company ("Lion Brand") https://www.lionbrand.com/ (the Website).  It is undisputed that Title III (and consequently the MHRA) applies to places of public accommodation that are owned or operated by private entities.  However, there exists a great deal of dispute as to whether stand-alone websites are places of public accommodation as the plain language of Title III refers solely to physical structures and as websites are not mentioned anywhere in Title III or its implementing regulations.  The plurality of courts that have addressed this issue have held that the plain language of the statute and regulations controls, and until these laws are amended, stand-alone websites are not subject to their requirements.

As Plaintiffs' Amended Complaint is based on the erroneous contention that websites are places of public accommodation, the Amended Complaint fails to state a claim upon which relief may be granted; as such, dismissal pursuant to Fed. R. Civ. P. 12(b)(6)

1

is warranted. For these and the following reasons, Lion Brand respectfully requests that the Court grant the instant Motion to Dismiss.

## BACKGROUND FACTS

Lion Brand owns and operates the Website, which sells knitting and craft yarn directly to the public. Am. Compl. ¶¶ 1, 22. Lion Brand does not operate a physical store. Am. Compl. ¶ 24; https://www.lionbrand.com/[1] Plaintiffs assert without elaboration that they are "legally blind and are therefore disabled under the ADA." Am. Compl. ¶ 20. Plaintiffs alleged that they are "reliant upon screen reader technology to navigate the Internet." Am. Compl. ¶ 7.

Plaintiffs include four allegations of alleged barriers on the Website:

a. Defendant's Website fails to alert screen readers to pop-up window content such as a "Subscribe and Save $15% on Your Next Order" opportunity and instead conveys non-sensical, confusing, and disorienting information. Instead, screen reader technology narrates the content of the Website's underlying page. As a result, pop-up content Defendant deems sufficiently important to convey to its sighted Website visitors is completely unavailable to screen reader users;

---

[1] The Court may take judicial notice of the contents of Lion Brand's website; after all, a complaint necessarily embraces a website when a defendant's conduct on that website is central to the dispute. *See Okash v. Essentia Health*, 2024 U.S. Dist. LEXIS 53126, *6 (D.Minn. 2024) (citing *WinRed, Inc v. Ellison*, 581 F. Supp. 3d 1152, 1167 n.9 (D. Minn. 2022)).

b. The Website does not provide sufficient screen reader-accessible text equivalent for important non-text image(s) such as various color swatch choices of yarn for sale. People who are blind will not be able to understand the content and purpose of images, such as pictures, illustrations, and charts when no text alternative is provided. Text alternatives convey the purpose of an image, including pictures, illustrations, charts, etc.;

c. Defendant's Website has inaccessible unordered drop-down menu lists which are unrecognized by screen reader technology. Users who depend on screen reader technology should know if and when unordered lists are presented and available for viewing; and

d. Defendant's Website conveys information visually and via color as the only means of conveying information and without audible narration, including sales prices that have been reduced from $5.99 to $4.19" making the information unavailable to screen reader users.

Am. Compl. ¶ 32. No specifics are provided regarding the web pages Plaintiffs claim to have visited. Am. Compl.

Plaintiffs claim that "Plaintiffs would like to, intend to, and will attempt to access Defendant's Website in the future to browse, research, or shop online and fully intends [sic] ton continue their practice of purchasing the products and services that Defendant offers from time to time." Am. Compl. ¶ 33.

## LAW AND ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The Court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id.* (citing *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014)). However, the Court does not credit "legal conclusions . . . or a formulaic recitation of the elements of a cause of action." *Id.* (quoting *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 955 (8th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678)).

## **Title III of the ADA Does Not Apply to the Website**

It is well-settled that in order to be held liable for a violation of Title III of the ADA, a defendant must own or operate a place of public accommodation.  This essential element is lacking in the present matter.  Lion Brand does not own or operate any physical stores; rather, it only sells its products to the public through the Website.  The law in this area has not kept up with technology; it is not the job of the courts to fix this issue.  Rather, the law must be applied as written unless and until Congress or the Department of Justice ("DOJ") amends the law to include stand-alone websites of private businesses.  For the time being, websites such as www.lionbrand.com are not subject to Title III of the ADA and claims that such websites are inaccessible fail to state a claim upon which relief may be granted.

The Americans with Disabilities Act was enacted in 1990, when the Internet as we know it today did not exist, and therefore, neither the ADA nor its implementing

regulations, promulgated by the DOJ in 1991, address website accessibility. See 42 U.S.C. § 12101 et seq.; ADA Standards for Accessible Design, 28 C.F.R. part 36.

Rather, Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any ***place of public accommodation*** by any person who owns, leases (or leases to), or operates a ***place of public accommodation***.". 42 U.S.C. § 12182(a) (emphasis added).  Similarly, the MHRA[2] provides that it is an unfair discriminatory practice:  (1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a ***place of public accommodation*** because of . . . disability . . . ; or (2) for ***a place of public accommodation*** not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.  Minn. Stat. § 363A.11, subd. 1(a) (emphasis added).

Thus, the critical question is whether a website such as https://www.lionbrand.com/ is a "place of public accommodation" subject to the requirements of Title III.  Title III does not contain a definition of the term "place of public accommodation," but it does define "public accommodation" as follows:

---

[2] Claims under the ADA and the MHRA are analyzed in the same fashion. *Disability Support Alliance v. Heartwood Enters.,* 2016 U.S. Dist. LEXIS 23072, *13-14 (D. Minn. 2016) (citing *Wong v. Muddy Pig, Inc.,* 2015 U.S. Dist. LEXIS 5301, 2015 WL 225231, at *1 (D. Minn. 2015)).

The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce—

(A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;

(B) a restaurant, bar, or other establishment serving food or drink;

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

  (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

  (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

  (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

*Id*. § 12181(7).

"Website" is conspicuously absent from this list. The exclusion of "website" from the definition of "public accommodation" should be the end of the inquiry. By its plain language, Title III only applies to the enumerated categories listed above *Id.* ("The following private entities are considered public accommodations *for purposes of this subchapter*") (emphasis added). That "website" is not included definitively answers the question of whether Title III applies to websites.

However, the plain language of the definition of a "public accommodation" is not the only basis that courts have found that Title III does not apply to websites. Courts have analyzed the entirety of the statute and have determined that a website is not only not a "public accommodation," it is also not a "place of public accommodation." This is because Congress did not prohibit discrimination in a "public accommodation", but rather, prohibited discrimination in "***places*** of public accommodation."

For this reason, the definition of the word "place" is of critical importance. Merriam-Webster defines "place" as

  1a: physical environment

7

    b: a way for admission or transit

    c: physical surroundings

    2 a: an indefinite region or expanse

    b: a building or locality used for a special purpose

    3 a: a particular region, center of population, or location

    b: a building, part of a building, or area occupied as a home

    https://www.merriam-webster.com/dictionary/place.

These definitions demonstrate that "place" refers to a physical location; consequently, a "place of public accommodation" that must be accessible pursuant to Title III is the physical facility that houses a public accommodation. This interpretation that a "place of public accommodation" is a physical manifestation of A-L above is consistent with the existing regulations regarding Title III that only apply to physical structures. If the DOJ had intended for Title III to apply to cyberspace, it would have enacted regulations stating as much. However, it has not done so.

Instead, the DOJ has issued not one but two comprehensive sets of regulations regarding the accessibility of *physical* places of public accommodation pursuant to Title III. 28 CFR Part 36 in 1991 and again in 2010. While the internet as we know it was not in existence in 1991, by 2010 the internet was ubiquitous in daily life. The DOJ only enacted regulations regarding the accessibility of physical places of public accommodation at this time. Indeed, the DOJ has never enacted *any* accessibility standards to be applied to the websites of private businesses. That the DOJ has taken steps to enact standards *only*

with respect to physical places bolsters the conclusion that ***Title III, as it is currently written, does not apply to websites,*** including https://www.lionbrand.com/.

There is no dispute that the drafters of Title III did not intend this law to apply to websites as websites for private businesses did not exist at the time Title III was enacted. The DOJ has had over thirty years to promulgate regulations specifying the metrics that websites of private business must meet, but they have not done so. This absence of action by the DOJ strongly indicates that Title III still does not apply to websites of private businesses, and individuals may not maintain lawsuits against private businesses with respect to the accessibility of their websites.

There is a split among the courts on the issue of whether only a physical structure may be a "place" of public accommodation. The Eighth Circuit has not addressed this issue; it is an issue of first impression. Lion Brand submits that this Court should follow the well-reasoned precedent set forth by the plurality of the Circuits.

The Courts of Appeals for the Third, Sixth, Ninth, and Eleventh Circuits hold that the statute is unambiguous: "places of public accommodation" are physical structures, and the only goods and services that a disabled person has a "full and equal" right to enjoy are those offered at a physical location. Discrimination only exists if the discriminatory conduct has a "nexus" to the goods and services of a physical ***place*** of public accommodation. Therefore, websites such as https://www.lionbrand.com/, which are not connected to a physical place of public accommodation, are not places of public accommodation subject to accessibility requirements under Title III.

9

These Circuits base their conclusion on the plain language of the statute, which lists physical locales as "public accommodations." *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612-13 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place…This is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places"); *Peoples v. Discover Financial Services, Inc.*, 387 F. App'x 179, 183 (3d Cir. 2010) ("Our court is among those that have taken the position that the term [public accommodation] is limited to physical accommodations"); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1010-11 (6th Cir. 1997) (en banc) ("As is evident by § 12181(7), a public accommodation is a physical place and this Court has previously so held"); *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1114 (9th Cir. 2000) ("Title III provides an extensive list of 'public accommodations' in § 12181(7) ... All the items on this list, however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services. . . . [T]his context suggests that some connection between the good or service complained of and an actual physical place is required."). *See also Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012), aff'd, 600 F. App'x 508, 509 (9th Cir. 2015) (holding that Netflix's website is unconnected to any physical, concrete retail establishment and is therefore not a public accommodation under the ADA); *Access Now, Inc. v. Southwest Airlines Co.,* 227 F. Supp. 2d 1312, 13218-19 (S.D. Fla. 2002), aff'd, 385 F.3d 1324, 1327-28 (11th Cir. 2004) (finding plaintiff failed to establish a nexus between southwest.com and any restriction on the full enjoyment of a physical, concrete place of public accommodation); *Jancik v. Redbox Automated Retail,*

10

*LLC,* 2014 U.S. Dist. LEXIS 67223, at *24 (C.D. Cal. 2014) (holding a website was not a place of public accommodation because it was not a physical place and there was not a sufficient nexus between the website and physical kiosks); *Young v. Facebook, Inc.,* 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) ("Under controlling Ninth Circuit authority, places of public accommodation' under the ADA are limited to actual physical spaces . . . Facebook operates only in cyberspace, and is thus is not a 'place of public accommodation' as construed by the Ninth Circuit. While Facebook's physical headquarters obviously is a physical space, it is not a place where the online services to which [the plaintiff] claims she was denied access are offered to the public.").

The arguments espoused by these courts are grounded in the plain language of the statute and implementing regulations and provide the only logical conclusion based on this language.

In contrast, the First and Seventh Circuits have held that places of public accommodation need not be physical structures. *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12 19-20 (1st Cir. 1994); *Doe v. Mutual of Omaha Insurance Co.,* 179 F.3d 557, 559 (7th Cir. 1999. The courts following this precedent rely on the argument that it would be an "absurd" result if certain businesses were exempt from the ADA. While there can be disagreement as to whether there is an "absurd" result if the websites of online-only businesses are covered, there can be no disagreement that neither the original intent of the drafters of the ADA nor the plain language of the ADA contemplated websites. The solution to what some may consider to be an "absurd" result is to lobby Congress or the DOJ to take action; the answer is not to

11

develop more and more tortured interpretations of a clearly worded statute. This Court should not follow the First and Seventh Circuits down the path of reading requirements into the statute that do not exist, and instead should follow the reasoning of the Third, Sixth, Ninth, and Eleventh Circuits and apply the plain language of the law.

As such, Lion Brand respectfully requests that the Court dismiss Plaintiffs' claim pursuant to Fed. R. Civ. P. 12(b)(6).

## **The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims**

28 U.S.C. § 1367 permits courts to exercise supplemental jurisdiction only for a civil action for "which the district courts have original jurisdiction." 28 U.S.C. § 1367(a); see also id. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"). "[I]f a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). As set forth above, Plaitniffs lack standing for — and thus the Court lacks subject-matter jurisdiction for — their federal-question claims under Title III of the ADA. Thus, the Court has no basis for supplemental jurisdiction over Plaintiffs' remaining claims under the MHRA. *LeMaster v. Ditech Fin. LLC*, 2018 U.S. Dist. LEXIS 131084, *5-6 (D. Minn. 2018) (citing *Myers v. Richland Cty.*, 429 F.3d 740, 749 (8th Cir. 2005)). The Court should therefore dismiss those claims without prejudice.

## **CONCLUSION**

Because Title III and the MHRA do not apply to stand-alone websites such as https://www.lionbrand.com/, Plaintiffs have failed to state a claim upon which relief may be granted. As such, Lion Brand respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety.

Respectfully submitted,

*/s/ Jennifer S. Rusie*
Jennifer Zwilling, MN Bar No. 0389153
Jackson Lewis P.C.
150 South Fifth Street, Suite 3500
Minneapolis, MN 55402
Telephone: (612) 359-1766
jennifer.zwilling@jacksonlewis.com

Jennifer S. Rusie (admitted pro hac vice)
Jackson Lewis, P.C.
611 Commerce Street, Suite 2803
Nashville, TN  37203
Telephone: (615) 565-1661
jennifer.rusie@jacksonlewis.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2024, the foregoing was served via the Court's ECF system upon the following:

**Jason D Gustafson**
Throndset & Michenfelder Law Office LLC
One Central Avenue West, Suite 101
St. Michael, MN 55330
Phone: 763-515-6110
Email: jason@throndsetlaw.com

**Patrick W Michenfelder**
Throndset Michenfelder Law Office, LLC
222 South Ninth Street, Ste 1600
Minneapolis, MN 55402
Phone: 763-515-6110
Email: pat@throndsetlaw.com

*/s/ Jennifer S. Rusie*
Jennifer S. Rusie

4887-0687-7396, v. 1