UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Clarence and Tammy FrostCase No.: 24-cv-950(KMM/LIB)
Individually and on behalf of all
Others similarly situated,

Plaintiffs,**PLAINTIFF'S STATEMENT**
**OF THE CASE**

vs.

Lion Brand Yarn Company,

Defendant.
_____

Plaintiffs, Clarence and Tammy Frost ("Plaintiffs") respectfully submits this Statement of the Case pursuant to March 14, 2025 (ECF. 41) Amended Pretrial Scheduling Notice and Order.

### Plaintiffs Version Of The Facts Of The Case

Plaintiffs and the members of the putative class are blind and low-vision individuals and are reliant upon screen reader technology to navigate the Internet.

Screen reader "software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y. 2017) (J. Weinstein).

> The screen reading software uses auditory cues to allow a visually impaired user to effectively use Websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight-impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the

1

link says the word "clickable." … Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a Website by listening and responding with her keyboard.

Plaintiff Tammy Frost does not have eyes and is completely blind. Her husband, Plaintiff Clarence Frost, has severe low vision. They are both dependent on the use of screen reader technology to navigate the internet. Neither of them, independently or together, could or has ever been able to navigate and understand Defendant's Website or complete an online purchase of yarn from it without assistance.

**Listing of particularized facts which support the claimed liability or defenses, including any applicable statutes as identified by number**

The ADA requires Defendant to provide "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of its website. 42 U.S.C. § 12182(a). In particular, Defendant must "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii). Defendant must "furnish appropriate auxiliary aids and services," which include things like "accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision," when "necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(b)(2), (c)(1). Auxiliary aids and services are only "effective" if "provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id*. at. § 36.303(c)(1)(ii).

2

Plaintiff Tammy Frost recalls at least three separate occasions when she visited Defendant's Website, encountered difficulties, and was unable to complete her intended purchase independently because Defendant's Website conveyed confusing, disorienting and non-sensical information to her screen-reader. As a consequence of their experience visiting Defendant's Website, including in the past year, the Plaintiffs' brought the Website to the attention of the undersigned counsel. Counsel completed both automated and manual audits of the Website, all of which confirmed Plaintiffs' description of their user experience and that the Website did not afford individuals who are dependent upon screen-reader technology a full, equal, and independent opportunity to enjoy a user experience equal to that available to Defendant's sighted customers, and failed to ensure effective communication with screen-reader-dependent users through the provision of accessible electronic and information technology.   For example:

    a. Defendant's Website fails to alert screen readers to pop-up window content such as a "Subscribe and Save $15% on Your Next Order" opportunity and instead conveys non-sensical, confusing, and disorienting information. Instead, screen reader technology narrates the content of the Website's underlying page. As a result, pop-up content Defendant deems sufficiently important to convey to its sighted Website visitors is completely unavailable to screen reader users;

    b. The Website does not provide sufficient screen reader-accessible text equivalent for important non-text image(s) such as various color swatch choices of yarn for sale. People who are blind will not be able to understand the content and purpose of images, such as pictures, illustrations, and charts when no text alternative is provided. Text alternatives convey the purpose of an image, including pictures, illustrations, charts, etc.;

    c. Defendant's Website has inaccessible unordered drop-down menu lists which are unrecognized by screen reader technology. Users who depend on screen reader technology should know if and when unordered lists are presented and available for viewing; and

3

      d. Defendant's Website conveys information visually and via color as the only means of conveying information and without audible narration, including sales prices that have been reduced from $5.99 to $4.19" making the information unavailable to screen reader users.

The evidence demonstrates that Defendant's website is not screen-reader compatible and therefore fails to provide an equally enjoyable user experience for blind visitors to its Website, nor does it provide "accessible electronic and information technology" to ensure effective communication for the blind through its online platform.

### Plaintiff's Itemization and Explanation of Any Claimed Damages

Plaintiffs, on behalf of themselves and others who are similarly situated, seek relief including an injunction requiring Defendant to make its website accessible to Plaintiffs and the putative class; and requiring Defendant to adopt sufficient policies, practices, and procedures, the details of which are more fully described below, to ensure that Defendant's website remains accessible in the future. Plaintiffs' companion claims under the Minnesota Human Rights Act, seek including mandatory civil penalties payable to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4; punitive damages, damages and a damage multiplier pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4., as well as nominal damages under *Uzuegbunam. et.al v. Presczewski*, et.al. 141 S. Ct. 792 (2021). Plaintiffs also seeks to recover reasonable monitoring fees to ensure compliance with any settlement agreement. Compliance monitoring is necessary— and compensable—to ensure our clients, and others who will benefit from their claim, may fully, equally, and independently access the Defendant's website in accordance with the terms of any settlement that is reached. *See e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986), *supplemented*, 483 U.S. 711 (1987)

(*citing Northcross v. Board of Educ.*, 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed working…are compensable services. They are essential to the long-term success of the plaintiff's suit."); *see also People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments."); *Lindy Bros. Builders, Inc. v. American Radiator & Stand. Sanitary Corp.*, 540 F.2d 102, 121 (3d Cir. 1976) (en banc), which the Sixth Circuit cites in *Northcross* for the proposition that "prospective fees may be awarded to cover anticipated monitoring services[.]"

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Dated: March 26, 2025 | **THRONDSET MICHENFELDER, LLC** |

By: /s/Patrick W. Michenfelder
Patrick W. Michenfelder (#024207X)
Chad A. Throndset (#0261191)
Jason D. Gustafson (#0403297)
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (763) 515-6110
Fax: (763) 226-2515
Email: pat@throndsetlaw.com
Email: chad@throndsetlaw.com
Email: jason@throndsetlaw.com
*Attorney for Plaintiffs*